2011 OK CIV APP 116

**Linda Sue EDELEN, Administrator of the Estate of Dustin H. Edelen, Plaintiff/Appellant,**

v.

**BOARD OF COMMISSIONERS OF BRYAN COUNTY and Bill Sturch, Sheriff of Bryan County, Defendants/Appellees.**

**No. 107,340.**

Court of Civil Appeals of Oklahoma, Division No. 2.

July 13, 2011.

Certiorari Denied Oct. 24, 2011.

William B. Maxwell, Enid, Oklahoma, for Plaintiff/Appellant.

Jamison C. Whitson, Andy A. Artus, Collins, Zorn & Wagner, P.C., Oklahoma City, Oklahoma, for Defendants/Appellees.

JOHN F. FISCHER, Vice Chief Judge.

¶ 1 Linda Sue Edelen, Administrator of the Estate of Dustin H. Edelen (Administrator) appeals the dismissal of her petition as to the Board of County Commissioners of Bryan County and Bryan County Sheriff Bill Sturch.[1] Administrator's decedent, Dustin H. Edelen (Edelen), sued the Commissioners, the Sheriff and the Oklahoma Department of Corrections for injuries Edelen received while incarcerated in the Bryan County jail. Edelen alleges that the defendants were negligent in maintaining the jail and delayed and denied medical care for his injuries. The defendants filed a motion pursuant to 12 O.S. Supp.2010 § 2012(B)(6) arguing the petition failed to state a claim. The order granting that motion is the subject of this appeal. Because the Governmental Tort Claims Act provides the defendants immunity with respect to the negligence claim, we affirm the dismissal of that theory of recovery. However, we find the allegations in the petition sufficient to state a claim with respect to the denial of medical care, and that portion of the order appealed is reversed.

---

1. Administrator was substituted as the named appellant when plaintiff/appellant Dustin H. Edelen died during the pendency of this appeal.

## BACKGROUND

¶2 While awaiting transfer to the DOC after his conviction and sentencing, Edelen was incarcerated in the Bryan County jail. His petition alleges: the Sheriff and Commissioners failed to repair a known leak in the jail sewer system and failed to comply with Department of Health regulations for the operation of jails; when the jail sewer overflowed his cell floor became extremely slick; he slipped on the floor and broke his elbow; the Sheriff and the Commissioners failed to provide proper medical care, and as a result his elbow was permanently damaged and beyond repair by the time he was seen by an orthopedic surgeon. Edelen first sought relief pursuant to the Oklahoma Governmental Tort Claims Act (GTCA), 51 O.S. Supp.2010 §§ 151 to 200. When relief was denied, he filed this case. The Sheriff and Commissioners filed a motion to dismiss Edelen's petition pursuant to 12 O.S. Supp. 2010 § 2012(B)(6), arguing Edelen had failed to state a claim on which relief could be granted because they were immune from suit.[2] The district court granted that motion and directed the entry of a final judgment as to the dismissal of the Sheriff and Commissioners pursuant to 12 O.S.2001 § 994(A), finding "no just reason" for delaying this appeal.

## STANDARD OF REVIEW

¶3 Appellate review of a motion to dismiss involves a *de novo* consideration of whether the petition is legally sufficient. *Indiana Nat'l Bank v. Dep't of Human Servs.*, 1994 OK 98, ¶2, 880 P.2d 371, 375.

Motions to dismiss are generally viewed with disfavor. The purpose of a motion to dismiss is to test the law that governs the claim (in litigation), not the underlying facts. A motion to dismiss for failure to state a claim upon which relief may be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief. The court, when considering a defendant's quest for dismissal, must take as true all of the challenged pleading's allegations together with all reasonable inferences that may be drawn from them. A plaintiff is required neither to identify a specific theory of recovery nor to set out the correct remedy or relief to which he may be entitled. If relief is possible under any set of facts which can be established and is consistent with the allegations, a motion to dismiss should be denied.

*May v. Mid–Century Ins. Co.*, 2006 OK 100, ¶10, 151 P.3d 132, 136. Despite the Oklahoma Supreme Court's consistent articulation of this standard, the defendants argue that Edelen's petition, to the extent it relies on federal constitutional claims, should be tested pursuant to federal pleading standards and dismissed because it fails to state a "plausible" claim. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (holding complaints in federal cases must contain sufficient factual matter that if true would state a claim that is plausible on its face). Oklahoma has not adopted this pleading standard. *See Kirby v. Jean's Plumbing Heat & Air*, 2009 OK 65, ¶5, 222 P.3d 21, 24 ("A petition can generally be dismissed only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable legal theory."). We decline to adopt a different pleading standard here.

## ANALYSIS

¶4 Edelen's petition asserts two theories of recovery against the Sheriff and Commissioners. The first is based on negligence. The second alleges failure to provide required medical care. These defendants asserted governmental immunity in their motion to dismiss as to both claims. The district court granted the motion on that basis: "the Defendants Board of Commissioners of Bryan County and Sheriff Bill Sturch are hereby dismissed from this suit pursuant to the terms of the GTCA, Okla. Stat. tit. 51, § 151, *et seq.*"

---

**2.** The motion also asserted a statute of limitations defense that was subsequently abandoned.

### I. The Negligence Claim

¶ 5 In his first theory of recovery, Edelen alleges that the Sheriff was negligent in failing to "investigate and repair" the sewer leak, and that "the Defendants" were negligent in failing to properly maintain the jail. Except to the extent sovereign immunity is specifically waived, "[t]he state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." 51 O.S.2001 § 152.1(A). Where a waiver of sovereign immunity has occurred, "[t]he liability of the state or political subdivision under [the GTCA] shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise." *Id.* § 153(B). Oklahoma has waived sovereign immunity for certain circumstances:

> The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.

*Id.* § 153(A). However, sovereign immunity has not been waived with respect to the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility...." *Id.* § 155(24).

> The meaning of the words 'provision,' 'equipping,' 'operation' and 'maintenance' is at issue. Assigning the ordinary meanings to those words, § 155[24] protects the state from liability for loss resulting from the actual stock of (provision) or the supplying of (equipping) all that is necessary to the functioning of a penal institution, or the process or manner of conducting (operation) the functions of a penal institution, or the process or series of acts necessary to sustaining (maintenance) the proper conditions of a penal institution.

*Medina v. State,* 1993 OK 121, ¶ 7, 871 P.2d 1379, 1382 (holding the state and prison officials were immune from suit for the allegedly negligent operational function of dispensing medicine to prisoners). Consequently, Edelen's claim against the Commissioners and the Sheriff based on negligent operation and maintenance of the jail is barred by the GTCA. The district court correctly dismissed Edelen's petition based on this theory of recovery and that portion of the district court's order is affirmed.

### II. The Medical Claim

¶ 6 Edelen's medical claim alleges he broke his elbow when he slipped and fell in his cell. He alleges the Sheriff refused to provide medical care for his broken elbow resulting in permanent damage. This claim invokes state and federal constitutional claims: Okla. Const. art. 2, § 9, and the Eighth Amendment to the United States Constitution. These provisions are identical: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." The constitutional prohibitions on cruel and unusual punishment apply to those convicted of a crime. *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); *Ingraham v. Wright,* 430 U.S. 651, 671–72, n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Washington v. Barry,* 2002 OK 45, ¶¶ 9–10, 55 P.3d 1036, 1039.

> The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment.
>
> The United States Supreme Court has recognized that 'deliberate indifference to serious medical needs of prisoners' may constitute cruel and unusual punishment under the Eighth Amendment. The Eighth Amendment therefore applies to prison officials when they provide medical care to inmates.

*Estate of Crowell v. Bd. of County Comm'rs of the County of Cleveland,* 2010 OK 5, ¶¶ 24–25, 237 P.3d 134, 142–43 (citations omitted).

¶ 7 In *Estate of Crowell,* the Supreme Court applied a two-step analysis to the plaintiff's medical claim, considering "the seriousness of the prisoner's medical

need and the nature of the defendant's response to that need." *Id.* ¶ 26, 237 P.3d at 143. "The prisoner must show (1) *objectively* that he suffered a sufficiently serious deprivation and (2) *subjectively* that prison officials acted with deliberate indifference in allowing or causing the deprivation to occur." *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 298–99, 111 S.Ct. 2321–24, 115 L.Ed.2d 271 (1991) (emphasis in original)). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury...." *Id.* ¶ 27. Edelen's petition satisfies the objective requirement by alleging his elbow was broken and then permanently damaged because he was not provided treatment. The petition meets the subjective requirement as well. It alleges that the "Defendant Sheriff failed to obtain the recommended care and by the time a qualified orthopedic physician examined the Plaintiff's broken elbow, the damage was deemed to be permanent."

 ¶ 8 As the Court noted in *Estate of Crowell:*

[T]he responsibility for medical care of persons incarcerated in the [county jail] [is placed] squarely on the sheriff. The sheriff makes the policies and provides the supervision. The sheriff of each county in Oklahoma has a statutory duty to provide 'medical care when required, and all necessities for the comfort and welfare of prisoners.'

*Id.* ¶ 29 (citing 57 O.S.2001 § 52). Therefore, " 'a sheriff is accountable in a [42 U.S.C.] § 1983 action whenever a sheriff, in a posi-tion of responsibility, knew or should have known of the misconduct, and yet failed to prevent future harm.' " *Id.* ¶ 31, 237 P.3d at 144 (quoting *Meade v. Grubbs,* 841 F.2d 1512, 1527(10th Cir.1988)). When considered pursuant to the standard for deciding a motion to dismiss, we find Edelen's petition states a claim against the Sheriff based on a potential violation of the Eighth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.[3] It would also establish a violation of Okla. Const. art. 2, § 9. *See Washington v. Barry,* 2002 OK 45, ¶¶ 9–10, 55 P.3d at 1038 (holding that a prisoner in a penal institution has a right to be protected from the infliction of cruel or unusual punishments under the state and federal constitutions, citing Okla. Const. art. 2, § 9, and the Eighth Amendment). Therefore, because "relief is possible under [the] set of facts" alleged in Edelen's petition, it was error to grant the Sheriff's motion to dismiss. *See May v. Mid–Century Ins. Co.,* 2006 OK 100, ¶ 10, 151 P.3d 132, 136. That portion of the order appealed is reversed.

 ¶ 9 Edelen's petition also alleges that the county delayed and denied "proper medical care for Plaintiff." First, the Commissioners may not defeat their potential liability by claiming the Sheriff is in charge of and is the official policy-maker for the county jail. Section 1983 extends liability to a county if its "decisionmaker possesses final authority to establish [county] policy with respect to the action ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986).[4]

---

**3.** "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." In their appellate briefing, the defendants argue that Edelen did not assert a section 1983 claim in the district court and cannot do so now. First, Edelen's response to the defendants' motion to dismiss relies on *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the fundamental federal case establishing a prisoner's federal constitutional right to medical care. Second, despite the provisions of 12 O.S. Supp. 2010 § 2012(G) requiring that Edelen be permitted to amend his petition if the "defect can be remedied," Edelen was not permitted to do so after the defendants' motion was granted. Third, because the defendants chose to file a motion to dismiss Edelen's petition for failure to state a claim, Edelen was "required neither to identify a specific theory of recovery nor to set out the correct remedy or relief to which he may be entitled" in order to defeat their motion. *May v. Mid–Century Ins. Co.,* 2006 OK 100, ¶ 10, 151 P.3d 132, 136.

**4.** However, merely showing that harm resulted from a policy-maker's act is insufficient. *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (holding that evidence establishing the sheriff hired a deputy before conducting adequate screening failed to show that the

Second, the Commissioners have an independent "federal constitutional and state statutory duty to provide medical treatment for inmates in custody." *HCA Health Servs. of Oklahoma, Inc. v. Whetsel*, 2007 OK 101, ¶ 10, 173 P.3d 1203, 1206 (reversing summary judgment in favor of a county in a claim by medical providers for reimbursement of the costs of treating a prisoner in county custody). Although the "sheriff shall have charge of the jail," 19 O.S.2001 § 513, a county shall provide for a jail, "at the expense of the county ... for the safekeeping of prisoners lawfully committed." 57 O.S.2001 § 41.

> [I]t is conceded by all that certain necessary fundamental functions must always be actively exercised in order to preserve the existence of the state and secure to the people the rights guaranteed to them, among which are the right to life, liberty, the possession of property, and the pursuit of happiness, and should the state become so impotent as to be unable to discharge these functions, there would result a failure of the purposes for which government was established. The surest way to bring about this result is to construe the Constitution in such a way as to place it in the power of one set of officials to deprive another of the means necessary for the performance of the duties imposed upon that other. If we give the Constitution such construction the enforcement of laws for the regulation and protection of the public peace and safety in any county might, in its ultimate analysis, depend upon the whim and caprice of certain local officials who might, by failing and refusing

> to make proper provision therefor [sic], render it impossible to secure an enforcement of such laws by the officers charged with the duty of so doing.

*Smartt v. Bd. of County Comm'rs of Craig County*, 1917 OK 590, ¶ 6, 169 P. 1101, 1102 (holding that a sheriff's lawful expenditure of money to feed prisoners in the discharge of duties imposed upon the sheriff by the Constitution and state laws constitutes a valid charge against the county). *See* 2007 OK AG 35, ¶ 20 (holding that "maintenance of a county jail ... is a constitutional duty," and the "county is required to provide for a jail and fund its operation, and give priority for the funding to ensure performance of a constitutional duty"). Further, a county must pay the expenses of its constitutional obligations before it pays for other services.

> We must conclude that the income and revenue of a county, including revenue derived from the maximum legislative limitation upon the rate of ad valorem taxation, must be appropriated and used for the defrayment of the cost of the constitutional governmental functions of the county in so far as it is necessary for that purpose, and that until an appropriation has been made for that purpose, no appropriation can be made for legislative governmental functions or for other expenditures of public funds ....

*Protest of Kansas City Southern Ry. Co.*, 1932 OK 328, ¶ 28, 11 P.2d 500, 509. A county's responsibility for medical care extends not only to those convicted of a crime, but also to pretrial detainees.[5]

---

sheriff's act was the "moving force" resulting in the subsequent use of excessive force during an arrest by the deputy).

5. *See* 57 O.S.2001 § 51:

It shall be the duty of the county commissioners, at the expense of their county, to provide suitable means for warming the county jail and its cells or apartments, beds and bedding, and such other permanent fixtures and to make such repairs as may be prescribed by the district judge or the State Department of Health. The commissioners shall also have power to appoint a medical officer to the jail and pay him such salary as they may think reasonable and proper, which shall be drawn out of the county treasury, and said medical officer or any physician or surgeon who may be em-

ployed in the jail shall make a report in writing whenever required by said commissioners, district judge or grand jury.

*See* 19 O.S. Supp.2010 § 746:

A. When a person is in the custody of a county jail, the custodial county shall only be liable for the cost of medical care for conditions that are not preexisting prior to arrest and that arise due to acts or omissions of the county. A preexisting condition is a condition for which the person received medical treatment or advice, or a condition which was diagnosed in the six (6) months preceding the custody of the person by the law enforcement agency. An accidental injury sustained during the six (6) months preceding the custody of that person by the law enforcement agency will also be considered a preexisting condition.

¶ 10 Edelen's petition alleges that in addition to the Sheriff, the Commissioners delayed and refused to provide required medical care for his broken elbow. These allegations distinguish this case from *Estate of Crowell*, 2010 OK 5, 237 P.3d 134, in which the alleged failure to provide adequate medical care resulted in the death of a prisoner. In that case the record established that the sheriff had developed a policy specific to Crowell designed to provide her necessary medical care. However, it was disputed whether the sheriff and his deputies were negligent in implementing this policy or supervising and training those who had direct care of Crowell. There were no facts in that case establishing that any defective county policy or custom resulted in the denial of medical care, or that the sheriff's established policy for Crowell was defective. Accordingly, summary judgment in favor of the county was affirmed. *See id.*

¶ 11 Likewise distinguishable is *Madoux v. City of Norman*, 2008 WL 938596 (W.D.Okla.), in which the federal district court for the Western District of Oklahoma, relying on *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir.1988), granted the county's motion to dismiss a complaint, finding the plaintiff's conclusory allegations that the county commissioners' failure to properly fund the sheriff's office resulted in a denial of medical care were insufficient to state a "plausible" claim.[6] Edelen's allegations are specific. Further, in *Meade*, the United States Court of Appeals for the Tenth Circuit affirmed the dismissal of a complaint by a pretrial detainee against the Commissioners of Oklahoma County based on the alleged use of excessive force during the booking process at the Oklahoma County jail. The federal appellate court held that the Commissioners could not be liable for a deputy's alleged use of excessive force in an action filed pursuant to 42 U.S.C.

§ 1983 because they "had no statutory duty to hire, train, supervise or discipline the county sheriffs or their deputies." *Meade*, 841 F.2d at 1528. The court cited two statutes in support of this conclusion: 19 O.S. Supp.2010 § 513 ("The sheriff shall have the charge and custody of the county jail and all prisoners therein, and shall keep such jail himself, or by his deputy or jailer") and 19 O.S. Supp.2010 § 547 ("The sheriff may appoint and revoke the appointment of deputy sheriffs and detention officers"). The court also relied on two Oklahoma Attorney General Opinions: 1979 OK AG 98 (cited for the proposition that the sheriff and the district attorney are the only two law enforcement officials in a county) and 1976 OK AG 338(cited for the proposition that a board of county commissioners does not have the authority to designate the number of deputies a sheriff may employ). Although *Meade* was correctly decided because there was no alleged connection between the excessive force used by sheriff's deputies and a county policy or custom, our view of the County's statutory and constitutional responsibility for the jail differs from that expressed in *Meade*.

¶ 12 Edelen alleges the Commissioners delayed and denied treatment for a serious medical condition that resulted in permanent damage to his elbow. That allegation, if proven, provides the "affirmative link" to the alleged violation of Edelen's constitutional right required by section 1983. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817–24, 105 S.Ct. 2427, 2433–36, 85 L.Ed.2d 791 (1985) (plurality opinion). The order dismissing Edelen's constitutional claims against the Commissioners is reversed.

### CONCLUSION

¶ 13 This appeal concerns an order granting a motion by the Commissioners and the Sheriff to dismiss Edelen's petition for fail-

---

B. An inmate in pretrial detention or the custody of a county jail shall be provided with the opportunity to receive necessary medical care for a preexisting condition and the inmate shall be liable for payment of the cost of such medical care including, but not limited to, medication, medical treatment, and transportation costs, for or relating to the condition requiring treatment.

6. Also, *Madoux* appears to have been decided using the pleading standard adopted in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (complaints in federal cases must contain sufficient factual matter that if true would state a claim that is plausible on its face).

ure to state a claim. Edelen's petition sets forth two theories of recovery. First, it is alleged that these defendants were negligent in their operation and maintenance of the Bryan County jail. The GTCA preserves sovereign immunity with respect to the maintenance and operation of the jail. Consequently, the district court correctly granted the defendants' motion in that respect and that portion of the order is affirmed. Second, Edelen alleges that these defendants delayed and denied him care for a serious medical condition. Because "relief is possible" based on these allegations, the dismissal of Edelen's petition with respect to this theory of recovery is reversed and this case is remanded for further proceedings.

¶ 14 **AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, P.J., and WISEMAN, J., concur.